**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| FREDRICK M. CROUT, JOSEPH MALIZIA, JOSEPH C. TABER, BRUCE BENNETT and LAKESIDE REALTY, INC., individually, and on behalf of all others similarly situated, </br></br>                Plaintiffs, </br></br>v. </br></br>COX INDUSTRIES, INC., N/K/A KOPPERS UTILITY AND INDUSTRIAL PRODUCTS INC., ARCH TREATMENT TECHNOLOGIES, INC., and CULPEPER OF ORANGEBURG LLC, </br></br>                Defendants. | C/A NO.:  3:22-2417-JFA </br></br>**SECOND AMENDED COMPLAINT
JURY TRIAL DEMANDED** |

Plaintiffs Fredrick M. Crout, Joseph A. Malizia, Joseph C. Taber, Bruce Bennett and Lakeside Realty, Inc., individually, and on behalf of all others similarly situated, (collectively "Plaintiffs") complaining of the Defendants herein, respectfully allege and show as follows:

**PARTIES AND JURISDICTIONAL STATEMENT**

1.  Plaintiff Fredrick M. Crout ("Plaintiff Crout") is a citizen of Lexington County, South Carolina and an owner of 432 Cove View Point, Columbia, South Carolina 29212, a lakefront lot with a wooden dock located on Lake Murray.

2.  Plaintiff Joseph A. Malizia ("Plaintiff Malizia") is a citizen of Lexington County, South Carolina and an owner of 110 Greenleaf Circle, Chapin, South Carolina 29036, a lakefront lot with a wooden dock located on Lake Murray.

3.  Plaintiff Joseph C. Taber ("Plaintiff Taber") is a citizen of Lexington County,

South Carolina and an owner of 326 Osprey Lake Drive, Chapin, South Carolina 29036, a lakefront lot with a wooden dock located on Lake Murray.

4. Plaintiff Bruce Bennett ("Plaintiff Bennett") is a citizen of Lexington County, South Carolina and an owner of 330 Osprey Lake Drive, Chapin, South Carolina 29036, a lakefront lot with a wooden dock located on Lake Murray.

5. Plaintiff Lakeside Realty, Inc. ("Plaintiff Lakeside") is a South Carolina corporation organized and existing under the laws of the State of South Carolina. Lakeside owns a wooden dock with 65 boat slips located on Lake Murray for use by residents of the Cedar Cove community, located in Richland County, South Carolina.

6. Defendant Cox Industries, Inc. n/k/a Koppers Utilities and Industrial Products Inc. ("Cox") is a South Carolina corporation organized and existing under the laws of South Carolina with its principal place of business in Orangeburg, South Carolina. Defendant Cox manufactured, sold and distributed products and the treated lumber used to construct the wooden docks owned by Plaintiffs (collectively, "Wood Products").

7. Defendant Culpeper of Orangeburg LLC ("Culpeper") is a Virginia company. Upon information and belief, Culpeper's principal place of business is in Orangeburg, South Carolina. On information and belief, Defendant Culpeper purchased Cox's dimensional lumber and treatment facility in Orangeburg, South Carolina on or about February 2018. Defendant Culpeper manufactured, sold and distributed Wood Products used to construct the wooden docks owned by Plaintiffs beginning in February 2018.

8. Defendant Arch Treatment Technologies, Inc., ("Arch") is a corporation organized under the laws of Virginia with its principal place of business in Georgia. On information and belief, Defendant Arch provided chemicals and wood treatment products to Cox

2

and/or Culpeper along with instructions, training, monitoring equipment and other complimentary services, all of which were used to treat lumber and create the Wood Products used to construct the docks at issue in this case.

9. This action relates to claims arising from the manufacture, treatment, sale and distribution of substandard and defective Wood Products by Defendants used to construct the wooden docks owned by Plaintiffs and other similarly situated South Carolina Plaintiffs.

10. Jurisdiction and venue are proper before this Court.

## FACTUAL ALLEGATIONS

11. Plaintiffs either contracted and paid for new waterfront docks to be built at their properties using Wood Products from Defendants or purchased property with waterfront docks built with Wood Products from Defendants already in place.

12. Defendant Cox supplied Wood Products for the purposes of building docks to contractors and consumers built and used in South Carolina from 2010 to 2018.

13. Defendant Culpeper supplied Wood Products for the purposes of building docks to contractors and consumers built and used in South Carolina from 2018 to present.

14. Defendant Arch is a global chemical manufacturing company that, upon information and belief manufactured chemical products used by Cox and/or Culpeper to treat the Wood Products.

15. Upon information and belief, Cox and/or Culpeper contracted with Arch and exclusively used Arch chemical products in treating the Wood Products.

16. Upon information and belief, Arch provided Cox and/or Culpeper training, instructions, and monitoring equipment regarding how to use Arch products to treat and protect the Wood Products.

17. Upon information and belief, Arch knew that its chemical products were being used to treat wood that Cox and/or Culpeper would then sell to consumers and/or contractors for the construction of waterfront docks.

18. Through product documentation, advertising, and other means, prior to the purchase and sale of the treated lumber material, Cox warranted that the Wood Products would meet the specifications necessary for use and application in construction of a dock, including, but not limited to, resistance to water damage, deterioration and rot. Furthermore, Cox is a specialized merchant relating to treated lumber material and provided the Wood Products for Plaintiffs' docks with knowledge of its intended use, which was the construction of the waterfront docks.

19. Through product documentation, advertising, and other means, prior to the purchase and sale of the treated lumber material, Culpeper warranted that the Wood Products would meet the specifications necessary for use and application in construction of a dock, including, but not limited to, resistance to water damage, deterioration and rot. Furthermore, Culpeper is a specialized merchant relating to treated lumber material and provided the Wood Products for Plaintiffs' docks with knowledge of its intended use, which was the construction of the waterfront docks.

20. None of the named Plaintiffs ever received any written warranties prepared or provided by any Defendant.

21. Plaintiffs were provided information both through the contractors building the docks and through product information for the Wood Products that the wood was treated wood that was suitable for building docks on fresh water, and that the wood would not be subject to rot or fungal decay through exposure to water or the elements in the course of its intended use.

22. Defendants knew or reasonably foresaw that their products would reach consumers such as Plaintiffs and Plaintiffs would reasonably rely on Cox's representations or Culpeper's representations that the Wood Products and the chemicals Arch manufactured, sold, supplied, and/or distributed for treatment of lumber were merchantable and suitable for the known purpose of constructing a lakefront or waterfront dock in South Carolina.

23. Arch knew or reasonably foresaw the products, systems and services it supplied would be used to treat the products that would reach consumers such as Plaintiffs and Plaintiffs would reasonably rely on Cox's representations or Culpeper's representations that the Wood Products and the chemicals Arch manufactured, sold, supplied, and/or distributed for treatment of lumber were merchantable and suitable for the known purpose of constructing a lakefront or waterfront dock in South Carolina.

24. The Wood Products manufactured, sold, supplied and distributed by Cox (prior to February 2018) and Culpeper (from February 2018 to the present) after treatment with chemicals supplied by Arch have prematurely failed, or are prematurely failing, throughout the docks (including structural posts). The Wood Products have splintered, lost strength and structural integrity, deteriorated, and/or rotted completely through, or is in the process of doing so, which damage was proximately caused by the products being improperly treated, designed, manufactured, supplied and/or distributed by the Defendants.

25. The defective Wood Products pose a serious risk of physical harm to the Plaintiffs, their guests, and invitees. For example, people have stepped through rotten boards as they walked out on docks built with Defendants' Wood Products.

26. The defective Wood Products, including the treated lumber treated with chemicals manufactured by Arch, that Cox or Culpeper treated, manufactured and sold, have rendered the

5

docks owned by Plaintiffs unusable, unsafe and in a condition unsuitable for their intended purpose.

27. The premature failure of the defective Wood Products is occurring on docks of other property owners constructed using Defendants' Wood Products manufactured and treated using the same or similar process from 2010 to the present.

28. The premature failure of the defective Wood Products is a latent defect that could not be discovered through reasonable diligence until the manifestation of premature rot and the subsequent discovery of the cause for that rot after reasonable diligence, which has occurred within the last three years for each named Plaintiff.

29. Upon information and belief, Defendants have known, or should have known, about the defective condition of its Wood Products and failed to disclose the information to Plaintiffs, thereby tolling any applicable statute of limitations or other applicable timelines for bringing Plaintiffs' claims.

30. As direct consequence of Defendants' negligent design, manufacture, treatment and sale of the defective Wood Products, each Plaintiff will be required to expend substantial sums to replace the dock, including, but not limited to, the cost of investigation, the demolition of the existing dock and removal of substandard Wood Products, design of the repair, the repair itself, loss of use, and other actual, incidental, consequential, special, direct and indirect damages all to Plaintiff in an amount to be determined at trial.

## CLASS ACTION ALLEGATIONS

31. Plaintiffs bring this action both individually and as a proposed class action against Defendants on behalf of themselves and all other similarly situated persons and entities who own a dock constructed in whole or substantial part with Defendants' Wood Products, including its

treated lumber. The Class is more particularly defined as follows:

> All persons and entities owning a wooden dock located on fresh water in South Carolina built using Defendants' treated Wood Products from January 1, 2010 to present.

> Excluded from the class are: (a) any Judge presiding over this action and members of their families; (b) Defendants and any entity in which Defendants have a controlling interest or which have a controlling interest in Defendants and their legal representatives, assigns and successors of Defendants; (c) Defendants' current or former employees, investors, members or officers and members of their families; (d) any property owner that has previously released claims regarding their dock or fully litigated claims precluded by res judicate; and (e) all persons who properly execute and file a timely request for exclusion from the Class.

32. Numerosity: The proposed Class is composed of over 100 people and properties dispersed among multiple counties, the joinder of whom in one action is impractical.

33. Commonality: Questions of law and fact common to the Class exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual issues include the following:

a. Whether the Wood Products manufactured, treated and sold by Defendant Cox Lumber were defective;

b. Whether the Wood Products manufactured, treated and sold by Defendant Culpeper were defective;

c. Whether the chemical products designed, manufactured, and/or distributed by Arch were defective;

d. Whether the process for treating lumber to create the Wood Products was deficient or defective;

e. Whether Defendants knew or should have known of the defects;

f. Whether Defendants are financially responsible to pay the full costs and expenses to repair the damages caused by the defective materials;

7

g.  Whether Defendants are obligated to pay compensatory damages, including but not limited to (a) compensation for repairs of the docks; (ii) temporary repairs; and (iii) loss of use; and

h.  Whether Plaintiffs are entitled to prejudgment interest, attorneys' fees and costs from Defendants.

34.  Typicality: Plaintiffs' claims are typical of Class member claims because all Class member claims arise out of Defendants' wrongful conduct in manufacturing, treating, and selling Wood Products. Defendants have acted on grounds generally applicable to the class.

35.  Adequate Representation: Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests adverse to those of the Class. Plaintiffs have retained counsel experienced in construction defect claims and complex litigation, including but not limited to class actions involving product liability and product design defects.

36.  Each Class Member has an interest of more than $100.00.

### FOR A FIRST CAUSE OF ACTION
**(Negligence/Gross Negligence as to Defendants Cox and Culpeper)**

37.  Plaintiffs hereby incorporate the allegations of the foregoing paragraphs as if fully restated herein.

38.  The acts and allegations of this cause of action apply to Cox for the time period prior to February 2018 and to Culpeper for time period of February 2018 to the present.

39.  At all times relevant hereto, Cox or Culpeper undertook and had a duty to Plaintiffs to exercise and use due care in the design, manufacture, treatment and sale of the Wood Products and to supply suitable treated lumber that would perform in accordance with the applicable building codes, good design, and prevailing industry standards.

40.  Cox or Culpeper breached their duties to Plaintiffs by manufacturing, treating and

selling substandard Wood Products that have prematurely failed.

41. Cox or Culpeper have acted in a manner that was negligent, grossly negligent, careless, reckless, willful, and/or wanton, as failures in the design, sourcing of materials, processing, treatment, manufacture and/or curing of the Wood Products have rendered them defective, unsuitable for their intended use, and unmerchantable.

42. Plaintiffs have been damaged as a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness, and/or wantonness of Cox or Culpeper and are entitled to recover actual damages and punitive damages in an amount to be determined by the jury.

## FOR A SECOND CAUSE OF ACTION
### (Negligence/Gross Negligence as to Defendant Arch)

43. Plaintiffs hereby incorporate the allegations of the foregoing paragraphs as if fully restated herein.

44. At all times relevant hereto, Arch undertook and had a duty to Plaintiffs to exercise and use due care in the design, manufacture, and sale of the chemical products used for treatment and sale of Cox's or Culpeper's lumber material, and in providing instructions for the proper treatment process, and in providing monitoring equipment to ensure the effective application of its chemical products. In addition, Arch had a duty to supply chemicals that would allow the lumber, when treated with Arch chemicals, to perform in accordance with the applicable building codes, good design, and prevailing industry standards.

45. Arch breached its duties to Plaintiffs by designing, manufacturing, and selling substandard products that caused the Wood Products to prematurely fail.

46. Arch has acted in a manner that was negligent, grossly negligent, careless, reckless, willful, and/or wanton, as failures in the design, sourcing of materials, processing, and

9

manufacture of its chemical products have rendered the Wood Products defective, unsuitable for their intended use, and unmerchantable.

47.     Plaintiffs have been damaged as a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness, and/or wantonness of Arch and are entitled to recover actual damages and punitive damages in an amount to be determined by the jury.

**FOR A THIRD CAUSE OF ACTION**
**(Breach of Express Warranty)**

48.     Plaintiffs hereby incorporate the allegations of the foregoing paragraphs as if fully restated herein.

49.     Defendants claim that they were supposed to have provided Plaintiffs the express warranty attached here as Exhibit A ("Express Warranty").

50.     Defendants failed to provide Plaintiffs the Express Warranty at the time of purchase or anytime thereafter until after this lawsuit was filed.

51.     Plaintiffs could not comply with the notice provisions or other provisions of the Express Warranty or make a claim within the time requirements of the Express Warranty because they never received a copy of the Express Warranty.

52.     Defendants are not entitled to rely on the limitations of liability or other limiting provisions in the warranty because they did not provide the warranty to Plaintiffs.

53.     The Express Warranty warrants the Wood Products against damage caused by termites or fungal decay (rot) that would make the wood structurally unfit for the intended application for as long as you own it.

54.     Defendants similarly warranted the Wood Products would be protected from fungal decay and wood rot by representing that the wood was "treated wood" in sales material,

advertising material and product information.

55. However, Defendants violated the Express Warranty and other express warrantiesbecause the Wood Products are defective and did not comply with even minimal standards for treated lumber, as they have prematurely deteriorated and in many cases completely rotted through.

56. The Wood Products that have deteriorated and rotted through pose a serious risk of physical harm, do not comply with industry standards, and are not fit for their intended purpose.

57. These warranties extend to Plaintiffs, who should have received the written warranties, are the foreseeable users of the Wood Products and were reasonably expected to be affected by defective Wood Products. The Wood Products have failed to satisfy the reasonable expectations of consumers and users of the product, proximately causing damage to Plaintiffs.

58. On information and belief, Defendants in bad faith engaged in a pattern and practice of refusing to issue the Express Warranty to Plaintiffs and deceptively hiding the existence of the Express Warranty from Plaintiffs because they knew or should have known that the Wood Products would not meet the standards set forth in the Express Warranty.

59. Plaintiffs have been damaged as a direct and proximate result of Cox's or Culpeper's breaches of express warranty and are entitled to recover actual damages in an amount to be determined by the jury.

## **FOR A FOURTH CAUSE OF ACTION**
**(Breach of Implied Warranties of Merchantability and Fitness for Particular Purpose as to Defendants Cox and Culpeper)**

60. Plaintiffs hereby incorporate the allegations of the foregoing paragraphs as if fully restated herein.

61.	The acts and allegations of this cause of action apply to Cox for the time period prior to February 2018 and to Culpeper for time period of February 2018 to the present.

62.	The design, manufacture, treatment and sale of the Wood Products came with implied warranties that the Wood Products would be properly manufactured, treated, suitable for use, free from latent defects, and specifically included an implied warranty of merchantability and an implied warranty of fitness for particular purpose for use in constructing lakefront or waterfront docks.

63.	Cox and Culpeper are both "merchants" under the South Carolina Uniform Commercial Code with respect to goods of the kind that were used for the construction of the dock at Plaintiffs' properties.

64.	The Wood Products manufactured, sold, supplied and/or distributed by Cox or Culpeper were defective and did not comply with even minimal standards for treated lumber used for the construction of lakefront and waterfront docks, as they have prematurely deteriorated and in many cases completely rotted through.

65.	The Wood Products are not "merchantable" as they cannot pass without objection in the trade for use as treated lumber, are not of fair average quality for treated lumber, are not fit for the ordinary purpose for which such goods are used, and do not run of even kind and quality within each unit and among all units involved.

66.	Based on the defective nature of the Wood Products, Cox or Culpeper have breached the implied warranties of merchantability and fitness for particular purpose. The defective Wood Products designed, manufactured, sold, and supplied by Cox or Culpeper were not "merchantable," were not fit for the ordinary and intended purposes for which the product was sold and used, and have failed to meet the reasonable expectations of Plaintiffs, as

consumers and users of the products.

67. Plaintiffs have been damaged as a direct and proximate result of Cox's and Culpeper's breach of the implied warranties of merchantability and fitness for a particular purpose and are entitled to recover actual damages in an amount to be determined by the jury.

**FOR A FIFTH CAUSE OF ACTION**
**(Strict Liability/Products Liability as to all Defendants)**

68. Plaintiffs hereby incorporate the allegations of the foregoing paragraphs as if fully restated herein.

69. The acts and allegations of this cause of action apply to Cox for the time period prior to February 2018 and to Culpeper for time period of February 2018 to the present.

70. Defendant Cox is in the business of manufacturing, treating, selling, supplying, and distributing Wood Products.

71. Defendant Culpeper is in the business of manufacturing, treating, selling, supplying, and distributing Wood Products.

72. Defendant Arch is in the business of manufacturing, selling, supplying and distributing chemicals and related equipment for the treatment of Cox's or Culpeper's lumber material.

73. In the course of their businesses, Defendants anticipated and expected its end products would reach the public without substantial change in the condition in which they were sold, including the Wood Products that reached the Plaintiffs.

74. Cox or Culpeper manufactured, treated, sold, supplied, and distributed Wood Products for Plaintiffs' docks that were substandard, defective, and prone to premature failure, such that they were in a defective condition that is unreasonably dangerous to the Plaintiffs, their invitees, and their property.

75. Arch manufactured, treated, supplied, and distributed the chemical products used to treat the lumber material for Plaintiffs' docks, and said chemicals were substandard, defective, and caused premature failure of the Wood Products, such the chemicals were in a defective condition that is unreasonably dangerous to the Plaintiffs, their invitees, and their property.

76. The Wood Products that reached the Plaintiffs were installed without substantial change in condition in which they were manufactured, treated, sold, supplied and/or distributed by Cox or Culpeper.

77. The chemicals, as applied to the lumber, that reached Plaintiffs were applied without substantial change in the condition in which they were manufactured, sold, supplied and/or distributed by Arch.

78. The cost for altering the design, construction and/or repair of the products supplied by Defendants was substantially less than the resulting damage, cost and injury suffered by the Plaintiffs.

79. The design, treatment and manufacture of the products sold by Defendants rendered the products inherently defective as sold and was the proximate cause of the damages suffered by Plaintiffs.

80. As a direct, foreseeable and proximate result of the manufacture, treatment and sale of the defective lumber material, Plaintiffs have been damaged and are entitled to recover actual damages in an amount to be determined by the jury.

### FOR A SIXTH CAUSE OF ACTION
**(Breach of Contract as to Defendants Cox and Culpeper)**

81. Plaintiffs hereby incorporate the allegations of the foregoing paragraphs as if fully restated herein.

82. The acts and allegations of this cause of action apply to Cox for the time period

prior to February 2018 and to Culpeper for time period of February 2018 to the present.

83. Plaintiffs were the intended third-party beneficiaries of the contracts of sale between Defendant Cox or Defendant Culpeper and the contractors that installed the docks.

84. The Express Warranty identifies Plaintiffs as the intended beneficiary of these sales, even though Defendants failed to give the Express Warranty to Plaintiffs.

85. Cox or Culpeper breached the contracts by providing defective Wood Products as described above.

86. As a direct and proximate result of Cox's and Culpeper's breaches of contract, Plaintiffs have suffered and continue to suffer actual and consequential damages.

### FOR A SEVENTH CAUSE OF ACTION
### (Breach of Contract as to Defendant Arch)

87. Plaintiffs hereby incorporate the allegations of the foregoing paragraphs as if fully restated herein.

88. Arch entered into contracts with Cox and Culpeper for the purchase of chemicals, use of treating processes and monitoring of those processes.

89. Cox and Culpeper entered into supplier contracts with certain contractors to sell the Wood Products to the contractors to build wooden docks on fresh water bodies in South Carolina for consumers like Plaintiffs.

90. Plaintiffs were the intended third-party beneficiaries of the contracts between Cox and Arch, or between Culpeper and Arch, for the chemicals, treating process, and monitoring equipment used to treat the Wood Products used to construct Plaintiffs' docks.

91. Arch breached the contracts by designing, manufacturing and/or providing defective chemical products, treatment instructions and training, or monitoring equipment as described above.

92. As a direct and proximate result of Arch's breach of contract, Plaintiffs have suffered and continue to suffer actual and consequential damages.

WHEREFORE, Plaintiffs, on behalf of themselves and all other members of the Class, pray that:

(1) the Court certify this case as a class action under Rule 23, SCRCP;

(2) they and the Class receive a trial by jury;

(3) they and the Class be awarded judgment against Defendants in the amount to be determined by the jury to include actual damages, consequential damages, and statutory damages;

(4) they and the Class be awarded punitive damages;

(5) they and the Class be awarded reasonable attorney's fees and costs of the suit;

(6) they and the Class be awarded prejudgment and post-judgment interest;

(7) they and the Class be awarded any further relief deemed proper by this Court.

        Respectfully submitted,

        /s/ Erik T. Norton

        Erik T. Norton (Fed. Bar# 9683)
        Harrell, Martin & Peace, P.A.
        135 Columbia Avenue
        Chapin, South Carolina 29036
        (803) 345-3353
        Email: Erik@hmp-law.com

            AND

        Keith M. Babcock (Fed. Bar# 1143)
        David L. Paavola (Fed. Bar #11713)
        Lewis Babcock L.L.P.
        1513 Hampton Street
        Post Office Box 11208
        Columbia, South Carolina 29211
        (803) 771-8000
        Email: kmb@lewisbabcock.com
              dlp@lewisbabcock.com

        Attorneys for Plaintiffs

Chapin, South Carolina
December 9, 2022.